State v. Jersey City.

THE STATE, THE NEW JERSEY RAILROAD AND TRANS-
PORTATION COMPANY, prosecutors, *vs.* THE MAYOR AND
COMMON COUNCIL OF JERSEY CITY.

1. That clause of the charter of Jersey City giving the common council
power, by general law, to declare nuisances and provide for their removal,
does not give the right to regulate the running of locomotive engines and
cars: the power to regulate the speed and running of locomotive engines
and railroad cars is given by a separate section of the charter.

2. The power to declare nuisances, and provide for their removal, does
not include the doing of an act which may be a nuisance—it is confined to
stationary nuisances, such as can be removed.

3. An ordinance declaring the running of any locomotive or train of
cars upon any track in the city at a greater rate than one mile in six min-
utes, or declaring the stopping of a train of cars upon the track of a rail-
road authorized by law, where the track does not cross a street or public
square, a removable nuisance, is not a fair or legal exercise of the power
to declare nuisances, and provide for their removal.

4. A railroad track is not a lot, street, dock, wharf, or pier, within the
meaning of the city charter; it is a public highway, created under the
authority of the legislature.

5. The power to regulate the speed of locomotives and railroad cars
does not authorize such regulation, except in the streets of the city, its
squares, and public grounds.

6. A general power given to a municipal corporation will not be held
to conflict with the charter of a railroad company, unless the charter of
the company is repealed or altered in express terms.

7. The common council may not declare anything a nuisance which
cannot be detrimental to the health of the city, or dangerous to its citizens,
or a public inconvenience, and even then not where the thing complained
of is expressly authorized by the supreme legislative power of the state.

8. The legislation of a municipal corporation must be subordinate to
the power to which it owes its existence.

9. Whether an ordinance confined in its operation to a particular street
or part of the city is a general ordinance—*query.*

10. Where the common council passes an ordinance which they have no
power to make, this court will set it aside on *certiorari* brought by a person
who may be affected by it, although no attempt has been made to enforce it.

*Certiorari* to set aside an ordinance passed by the common
council of Jersey City.

Argued before WHELPLEY, Chief Justice, and Justices OGDEN and VAN DYKE.

*Zabriskie*, for plaintiffs in *certiorari*.

*McClelland*, for defendants.

WHELPLEY, C. J. This *certiorari* brings before the court for review, upon the application of the New Jersey Railroad and Transportation Company, whose enjoyment of their railroad is affected by it, an ordinance of the defendants entitled, " A supplement to an ordinance entitled an ordinance declaring nuisances," passed June 19th, 1836.

The second and fifth sections of this ordinance are complained of.

Section 2. That the running of any locomotive steam-engine, train of cars, or cars of any kind whatsoever, through or upon *any track*, street or thoroughfare in this city at a faster or greater speed than one mile in six minutes shall be considered and is hereby declared to be a nuisance.

Section 5. That all and every locomotive or steam-engine, all steam carriages or railroad cars, which may stop or cease in one spot, between Warren and Prospect streets, on its or their passage through the city, shall be considered to be a nuisance.

The attempt to regulate the speed of the trains at other points within the city than street-crossings is complained of.

That part of the fifth section which prohibits the standing of trains at any place on the track of the company between Warren and Prospect streets is also complained of.

Two questions were raised by the prosecutors.

1. Had the corporation by their charter, properly construed power to pass the sections under the power to declare nuisances ?

2. If they have, have they not exceeded the limits of the power to declare nuisances in declaring acts nuisances which cannot be detrimental to the public health, safety or convenience?

By the charter of the defendants, the powers of the common council are very carefully defined and classified under forty-three different heads or subdivisions, each of which is carefully confined to one subject.

The sixth subdivision relates to the streets, squares and public grounds, and among other things declares that the common council shall have power to prevent immoderate driving in the streets and riding or driving over or upon the sidewalks, and to regulate the speed and running of locomotive engines and railroad cars through said city.

The eighth subdivision gives them power, by general law, to declare what shall be considered nuisances in lots, streets, docks, wharves and piers, and to direct, provide for and enforce their removal.

The second section of the ordinance does not profess to be in execution of the power to regulate the speed and running of locomotive engines and railroad cars through said city, but of the power to declare nuisances by general law.

This is not such a nuisance as was intended by the charter. The power given by the sixth section makes this plain. The design of the sixth and eighth sections was entirely different. The powers given by the one are not given by the other. The eighth section does not include the doing of an act, or contemplate *an act* as possibly to be declared a nuisance. It is confined to stationary nuisances, such as can be removed.

Nor is the railroad track a lot, street, dock, wharf or pier, within the meaning of the act. It is a public highway under the authority of the legislature, but is not a street of the city.

This construction of the eighth section invalidates both

sections of the ordinance complained of. But it was insisted, for the city, that the sixth section of the fourth title of the city charter, already cited, authorized the second section of the ordinance. We have already seen that the careful distribution and classification of the powers of the common council forbid the confounding of the power to regulate speed with that of declaring nuisances; that each power is to be executed by itself, by means of legislation appropriate to the power. Independently of this view, which seems conclusive, if it were otherwise, if the two powers can be exercised together, as they have been in this ordinance, the sixth section does not, by a fair construction, authorize the regulation of the speed of locomotives and trains at other points than the streets of the city, its squares, and public grounds. All the powers conferred in this section relate to these places. The general words must be restrained by the connection in which they are found. The closing words of the section manifest the meaning of the legislature, and in every *other respect* to secure to the public and adjoining owners the safe and convenient use of the *streets*, and *sidewalks, squares* and *public grounds*, for the purposes for which they are or may be laid out or dedicated. This declares that to have been the object of the previous provisions.

But assuming that the track of the railroad, where it does not intersect a street, is a lot within the meaning of the charter, and that the power to regulate speed need not be exercised under the sixth section exclusively, and is not confined to streets, &c., the question was discussed at the bar, whether the power to declare nuisances is without limit, except in the discretion of the common council; and if not, whether the whole of the two sections complained of are within those limits.

Did the legislature intend to confer absolute power upon the common council? Can it declare every four story brick dwelling-house a nuisance, and direct and

provide for its removal? Can it declare every covered carriage standing upon any lot in the city, or passing along the streets at a greater speed than one mile per hour, or stopping in any street of the city for one moment, a nuisance? And yet it is not preceived that any sound distinction can be made which will permit the exercise of the power in the cases provided in the ordinance, and not in those supposed.

It may be difficult to define with precision the limits of the power, and yet its attempted exercise in any given case may so clearly fall without those limits as to enable us to say this is not a legitimate exercise of the power.

Those parts of the two sections of the ordinance which attempt to control the mode in which the prosecutors shall use their track at other points than where it crosses streets and public places, so long as that use is authorized by their charter, are not legitimate exercises of the power to declare nuisances. It is not to be presumed that the legislature intended, by the grant of this general power, to enable the common council to repeal in effect the express powers granted by the charter of the prosecutors.

The eighth section of the company's charter authorizes them to regulate the description and formation of carriages that shall be used on the railroad, and all necessary machines, engines, wagons, carriages, or vehicles, and to regulate the time and manner of transporting goods and passengers on the railroads. The object of this provision was to vest in the company the entire management of the business of transporting freight and passengers; and assuming that the legislature have the power to alter or repeal by express words this section, which was denied by counsel upon the argument, they will not be held to have done it by grant of general powers, which can be exercised without conflicting with the provisions of their charter. *State* v. *Minton*, 3 *Zab.* 529.

In that case this court held that the general tax law declaring all lands liable to taxation, and repealing all

acts and parts of acts inconsistent with its provisions, did not repeal the provisions of a railroad charter exempting from taxation its lands. The court said the reasonable inference always is, that when the legislature intend to take away these, they will do it in express terms, and *e converso*, when they do not do it in express terms they do not intend to do it. *Expressio unis est exclusio alterius.* How far the legislature designed to interfere with the privileges of the ·company, they have said by giving the power to regulate speed *in the streets* of the city.

The common council, in the exercise of the power to declare nuisances, may not declare anything such which *cannot* be detrimental to the health of the city, or dangerous to its citizens, or a public inconvenience, and even then not when the thing complained of is expressly authorized by the supreme legislative power in the state. Its legislation must be subordinate to that of the state, the power to which it owes existence. When its acts of legislation are brought before this court, whose high duty it is to see that inferior tribunals vested with a limited jurisdiction, whether legislative or judicial, do not exceed their power, we must determine whether those acts are valid or not. *Ludlow* v. *Executors of Ludlow,* 1 *South.* 387; *Whitehead* v. *Gray,* 7 *Halst.* 38; *City of Camden* v. *Mulford,* 2 *Dutcher* 49.

I cannot think an ordinance declaring the running of any locomotive or train of cars upon any track in the city at a greater rate than one mile in six minutes a removable nuisance, or declaring the stopping of a train of cars for one moment upon the track of a railroad authorized by law, where the track does not cross a street or a public square, a removable nuisance, or a fair or legal exercise of the power to declare nuisances and provide for their removal. It is an unwarrantable interference with franchises granted by the legislature to be exercised by the prosecutors for the public good. The doing of such acts

cannot interfere with the public health, expose the inhabitants of the city to danger or inconvenience. I do not see why any railroad depot, or track, or freight-house, any train of cars in motion or stationary at any point in the city, cannot, under the same power, with equal propriety be declared nuisances, if the common council should so determine.

Whether an ordinance, confined by its terms to a particular part or street of the city, can be said to be a *general law* may admit of some doubt. If it may be limited to one street, why not to one house? It seems to me that when the legislature used the term general law they intended to provide against restricted local legislation, by which the common council might, under the form of declaring a nuisance, single out the property of a single citizen or corporation, and confiscate it for the public good.

The ordinance, so far as it attempts to control the speed of locomotive engines or cars upon the track of the prosecutors at other points than its intersection with streets and public grounds, and preventing their stopping their trains at such places, is an unwarrantable exercise of power not authorized by the charter, and should be declared void *pro tanto.*

OGDEN, J., concurred.

VAN DYKE, J., (dissenting.) The *certiorari* in this case brings before us an ordinance, passed by the common council of Jersey City, to reverse or annul which, or certain sections therein, is the object of the writ, and on the ground that the sections are null and void so far as these prosecutors are concerned, they never have violated any of them, nor done anything to render their passage necessary.

I am unable to perceive either the necessity or propriety of these proceedings. The ordinance is one which de-

clares certain things to be nuisances in that city, and seems to be confined to such things as are deemed dangerous or inconvenient in the public streets, and while not confined to railroads, locomotives, cars, and the like, still the principal force of the ordinance is directed against those things, and relates to their rate of speed, their standing in the streets, the fencing in the tracks, &c. The ordinance does not refer to the prosecutors by name, but is general in its character, and comprehends all railroads, all locomotives, and all cars, by whomsoever owned or used. There is no allegation or pretence that the prosecutors have violated this ordinance or rendered themselves in any way obnoxious to its provisions. Nor has there been any complaint, prosecution, or interference with them under the ordinance in question, nor have we any knowledge of any probability that there ever will be. Why, then, should we be called on to annul an ordinance, or any of its sections, which may be entirely harmless in itself, under which no one has ever suffered, and to enforce which no attempt may ever be made? Will it not be time enough to do this when an effort shall be made by some one to enforce some of its provisions against the prosecutors or some one else? There are now some half-dozen different railroads terminating in Jersey City, to all of which the sections of this ordinance apply with the same force that they do to the prosecutors; and it is absolutely impossible to say, amidst the whole of them, that no case can possibly arise where the provisions of some of the ordinances may not have just and legal force: and it seems to me decidedly unwise and improper to attempt to decide in advance every possible question that can arise under the ordinance, or any of its sections, by a sweeping nullification of the whole of them.

We shall certainly fill the court with a large amount of unprofitable, as well as unnecessary litigation, if we undertake to hear on *certiorari* every person who is displeased with the passage of any or all the useless, stupid, or nu-

gatory ordinances of all the municipal corporations of the state, or all the shallow, insane, or unconstitutional laws that may be passed by the legislature, simply because they have been passed, and where no attempt has been made, and probably never will be, to put them into execution.

If it be true, as the prosecutors allege, that this ordinance is void as to them ; that they never did anything to render its passage necessary ; that they have not violated it since, and do not intend to do so, they will always be able to defend themselves successfully if assailed or molested under it ; and until some such event occurs, I think the court should not interfere.

An effort has been made to draw a distinction between what are termed *judicial* ordinances and such as are not, and there is sufficient authority for sustaining the idea that the former may be, and should be removed and reversed without waiting for any proceedings to be had under them. But this is in no sense a judicial ordinance, but is clearly and purely a general one. It directs nothing to be done. It only prohibits the doing of certain things dangerous to the welfare of the city, It imposes no duties to be performed or burdens to be borne by any citizen or class of citizens in particular, but applies to all persons alike who shall violate it.

The class of ordinances which directs the paving of streets, the opening of sewers and the like by particular individuals, are likened to the decisions of legal tribunals, and if passed by competent authority, acting within their proper jurisdiction over the subject matter, they cannot be called in question collaterally, even if illegal and wrong, but must be first reversed, like an illegal judgment or decree of a court, by a direct appeal to a superior tribunal for that purpose. Hence they are termed *judicial* ordinances. But it is never necessary to take this course with an ordinance that is simply unconstitutional or null and void in itself. Advantage can always be taken of these and the like defects when an attempt is made to en-

force it. This, then, not being a judicial ordinance, we should not interfere with it in this way, even if it be unconstitutional or void. If it be not unconstitutional or absolutely void, but one of a nature which the common council had a legal right to pass, and is only useless and unnecessary, then we should not and cannot properly interfere with the legislative discretion in passing it. We have no power to limit such discretion when acting fairly within the scope of their authority.

The case of *Mulford* v. *Camden*, 2 *Dutcher* 49, is supposed to sustain the views of the prosecutors, but it seems to me to be directly the other way. It was a suit brought by the city of Camden against Mulford to recover for the paving of a street in front of his premises, the city councils having previously, by ordinance, directed him to do so, or in default thereof, that the city should cause the work to be done, and charge the same to the defendant. The defendant had failed to do the paving—the city had caused it to be done—and the suit was brought to recover the expense thereby incurred. It was conceded that the city had the power to pass such an ordinance; but it was set up as a defence that the ordinance was passed without the petition therefor of a majority in value of the landowners on said street, as the charter required. This defence was overruled by the court, which held that that was a judicial ordinance, and although it had been illegally passed, yet that the city had undoubted jurisdiction over the subject matter and the right to pass an ordinance of the kind, and that therefore the correctness of their action could not be called in question in such collateral manner; but that the error, if any, must be corrected by the removal of the illegal proceedings directly into this court for that purpose. But the court in that case held, with equal distinctness, that when an ordinance was absolutely null and void, as the one before us is alleged to be, it might be disregarded and held as nugatory in any proceeding whenever an attempt should be made to enforce

it. If, then, the ordinance is what it is alleged to be, there was no necessity or propriety in removing it into this court for reversal. The proceeding, therefore, should not be entertained.

CITED *in State* v. *Morristown,* 4 *Vr.* 61; *State* v. *City of Paterson,* 5 *Vr.* 171; *State* v. *Jersey City,* 5 *Vr.* 400.